# IN THE COURT OF APPEALS OF IOWA

No. 17-2024
Filed October 23, 2019

**EURIC ABRAY FOUNTAIN,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.

Euric Fountain appeals the summary disposition of his seventh application for postconviction relief. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

R. Ben Stone of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann, LLP, Des Moines, for appellant.

Euric Fountain, Fort Madison, pro se appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., Mullins, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MULLINS, Judge.**

Euric Fountain appeals the summary disposition of his seventh[1] application for postconviction relief (PCR). The primary issue we consider on appeal is whether the district court erred in concluding Fountain's application was barred by the three-year statute of limitations contained in Iowa Code section 822.3 (2017) because the information presented by Fountain did not amount to newly discovered evidence.[2]

## I.    Background Facts and Proceedings

The record, when viewed in the light most favorable to Fountain and affording him all legitimate inferences, discloses the following. Fountain and two other men, William Ridley and Will Howard, were charged with first-degree murder in relation to the 1987 death of Theodore Wilt. A jury found Fountain guilty of first-degree murder, Howard was separately convicted, and Ridley pled guilty to a charge of second-degree murder.[3] This court affirmed Fountain's conviction on direct appeal. Procedendo issued in 1990.

---

[1] Fountain filed his first application in 1993. It was denied by the district court, which was affirmed by this court on appeal in an unreported decision. He filed his second application in 1996. It was dismissed for failure to prosecute. The third application was filed in 2002. It was denied by the district court. We affirmed the denial. *Fountain v. State*, No. 04-0629, 2005 WL 3298058, at *1–2 (Iowa Ct. App. Dec. 7, 2005). A fourth application was filed in 2009. The application was dismissed by the district court. The supreme court dismissed the subsequent appeal as frivolous. Application number five was filed in 2012. We affirmed the district court's dismissal. *Fountain v. State*, No. 14-0670, 2016 WL 718916, at *1 (Iowa Ct. App. Feb. 24, 2016). Fountain filed his sixth application in 2016. The district court dismissed it and no appeal was taken.

[2] Fountain lodges a host of other arguments on appeal. We will address those additional arguments where necessary.

[3] Ridley testified on behalf of the State at Fountain's trial. Howard did not testify at the trial.

In 1996, Howard sent the attorney representing Fountain in the appeal of the denial of his first PCR application a letter, in which Howard stated his willingness to testify, under oath, that Fountain was not involved in Wilt's death.[4] Also in 1996, Fountain filed his second PCR application, citing Howard's purported testimony as newly discovered evidence. In 1997, the attorney representing Fountain in relation to his second PCR application wrote a letter asking Fountain whether he wanted to pursue a new trial upon Howard's statements, which "completely vindicates [Fountain] and indicates [he was] not even a participant in the murder." The attorney advised he did not believe Howard's testimony, alone, would result in a new trial for Fountain. The attorney also advised if he pursued a new trial using Howard's testimony, there was a possibility he could not use it in conjunction with other new evidence uncovered in the future. Fountain agreed to not pursue a new trial upon Howard's testimony, and the second application was ultimately dismissed for failure to prosecute.

At the murder trial in 1988, Dennis Daggett testified Ridley came to his residence and reported he and his cousin Euric had killed someone. Blanch Carr testified she saw Fountain, Howard, and Ridley at a bar she worked at the evening of the murder. She further testified at around 8:00 p.m., the three left the bar together. Carr testified the three returned to the bar together around midnight. While speaking with Howard thereafter, Carr observed dark spots on Howard's clothing that he reported was blood, and Howard indicated to her that they had killed someone. Carr also observed a blood smear on Howard's palm. Ridley and

---

[4] The letter was undated. At the PCR hearing, counsel for Fountain agreed the letter was exchanged in 1996.

Fountain left the bar together about thirty or forty-five minutes after their return. Ridley unequivocally testified that he, Howard, and Fountain were involved in the murder. Ridley's remaining trial testimony was generally in line with that of Carr and Daggett.

In 2015, Carr and Daggett authored affidavits in which they recanted some of their testimony. Daggett's affidavit is somewhat illegible, but he appears to have asserted he was coached to tell police and later testify Fountain was involved in the murder.[5] Carr recanted her testimony that Fountain left the bar with Ridley and Howard prior to the murder. However, she did state she later observed the three return to the bar together. She also recanted her testimony that Howard told her about a murder and that she observed blood on him. Howard also authored an affidavit in which he again stated Fountain was not involved in Wilt's death.[6]

In 2017, Fountain filed the instant PCR application in which he argued new evidence of material facts require vacation of his conviction. In a subsequent brief, he argued the alleged new evidence supported a claim of actual innocence. The State moved for summary disposition on statute-of-limitations grounds. The court granted the motion, concluding the information from Howard was not newly discovered and the 2015 affidavits were not credible. As noted, Fountain appeals.

## II. Standard of Review

Appellate review of summary-disposition rulings in a PCR proceeding is for legal error. *Schmidt v. State*, 909 N.W.2d 778, 784 (Iowa 2018). Summary

---

[5] Daggett's brother also authored an affidavit corroborating Daggett's recantation.
[6] The affidavit is signed by Howard but is not notarized or dated. The record suggests it was also authored in 2015.

disposition is appropriate if "there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." *Id.* (ellipsis in original) (quoting *Davis v. State*, 520 N.W.2d 319, 321 (Iowa Ct. App. 1994)); *see also* Iowa R. Civ. P. 1.981(3). The record is viewed "in the light most favorable to the nonmoving party," and we "draw all legitimate inferences from the evidence in favor of the nonmoving party." *Schmidt*, 909 N.W.2d at 784.

## III. Analysis

First, Fountain argues the district court erred in failing to conclude the information presented amounted to newly discovered evidence sufficient to toll the statute of limitations. PCR applications "must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued." Iowa Code § 822.3. "However, this limitation does not apply to a ground of fact . . . that could not have been raised within the applicable time period." *Id.* Indeed, "[n]ewly discovered evidence would constitute a 'ground of fact' under the statute." *Whitsel v. State*, 525 N.W.2d 860, 863 (Iowa 1994) (citations omitted).

As to the information received from Howard, the district court found the proffered evidence was not newly discovered because Fountain knew of the information for many years and chose not to act upon it. We agree. It is undisputed that Fountain became aware of Howard's purported testimony that would completely vindicate Fountain more than two decades ago. Assuming without deciding that it amounted to newly discovered evidence at that time, it was required to be brought within three years of its discovery. *See, e.g.*, *Martin v. State*, No. 17-1543, 2018 WL 3655092, at *2 (Iowa Ct. App. Aug. 1, 2018); *Hanegan v. State*,

No. 15-1775, 2016 WL 4803964, at *1 (Iowa Ct. App. Sept. 14, 2016); *Blackwell v. State*, No. 10-0681, 2012 WL 836766, at *4 (Iowa Ct. App. Mar. 14, 2012). Because it was not, it does not serve to toll the statute of limitations. *See* Iowa Code § 822.3. Howard's republication of the same in more detail in 2015 does not breathe second life into the information as newly discovered. *See Wilkins v. State*, 522 N.W.2d 822, 824 (Iowa 1994) (noting exception is limited to "a ground that the applicant was at least not alerted to in some way"). We affirm the district court on this point.

Fountain goes on to argue equitable tolling should be adopted and applied to toll the statute of limitations. The argument seems to be that, because his attorney advised him in 1997 that Howard's testimony would not be enough to get him a new trial and he followed the advice of counsel, equity requires the statute of limitations be tolled. He alternatively argues not allowing equitable tolling under Iowa Code chapter 822 is unconstitutional. The equitable-tolling arguments were not raised or decided below, and we will not consider them for the first time on appeal. *See, e.g.*, *Meier v. Senecaut*, 641 N.W.2d 532, 538 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."); *see also Taft v. Iowa Dist. Ct.*, 828 N.W.2d 309, 322 (Iowa 2013) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").[7]

---

[7] We also note our prior holdings that equitable tolling does not apply to section 822.3. *See, e.g.*, *McCullough v. State*, No. 17-0434, 2018 WL 346463, at *1 (Iowa Ct. App. Jan. 10, 2018); *Long v. State*, No. 16-1220, 2017 WL 2684345, at *2 (Iowa Ct. App. June 21, 2017); *Harrington v. State*, No. 16-0953, 2017 WL 2684340, at *1 (Iowa Ct. App. June 21,

Next, we reject Fountain's appellate pro se[8] claim of ineffective assistance of counsel in relation to his first two PCR applications as untimely under both former and current law. *Compare Dible v. State*, 557 N.W.2d 881, 886 (Iowa 1996) (holding ineffective assistance of PCR counsel "cannot serve as an exception to the three-year statute of limitations"), *abrogated on other grounds by Harrington v. State*, 659 N.W.2d 509, 520 (Iowa 2003), *with Allison*, 914 N.W.2d at 891 (allowing a claim of ineffective assistance of PCR counsel to be excepted from statute of limitations if "filed *promptly* after the conclusion of the first PCR action" (emphasis added)).[9]

---

2017); *Perdue v. State*, No. 15-1237, 2016 WL 4036173, at *1 (Iowa Ct. App. July 27, 2016); *Weatherly v. State*, No. 15-0681, 2016 WL 1366827, at *1 (Iowa Ct. App. Apr. 6, 2016); *James v. State*, 858 N.W.2d 32, 33 (Iowa Ct. App. 2014); *Everett v. State*, No. 12-1032, 2014 WL 3749338, at *2 (Iowa Ct. App. July 30, 2014); *Majors v. State*, No. 12-1090, 2013 WL 2637599, at *5 (Iowa Ct. App. June 12, 2013); *Fagan v. State*, No. 10-0739, 2012 WL 3854635, at *1 (Iowa Ct. App. Sept. 6, 2012); *Lawrence v. State*, No. 10-1238, 2011 WL 768785, at *2 (Iowa Ct. App. Mar. 7, 2011); *Stringer v. State*, No. 08-0188, 2008 WL 5235491, at *2 (Iowa Ct. App. Dec. 17, 2008).

And, Fountain makes no argument our supreme court's recent opinion in *Allison v. State*, 914 N.W.2d 866 (2018) adopted equitable tolling under chapter 822. *Compare Polk v. State*, No. 18-0309, 2019 WL 3945964, at *2 & n.3 (Iowa Ct. App. Aug. 21, 2019) (noting *Allison* may have adopted a "variant" of the equitable-tolling doctrine), *with Kelly v. State*, No. 17-0382, 2018 WL 3650287, at *4 n.1 (Iowa Ct. App. Aug. 1, 2018) (noting *Allison* did not adopt a variant of equitable tolling). In any event, as noted, the arguments were not preserved for our review.

[8] Recent legislation, effective July 1, 2019, foreclosed our ability to consider pro se materials when, as here, a defendant is represented by counsel. 2019 Iowa Acts ch. 141, § 30 (codified at Iowa Code § 814.6A(1) (2019)). While the supreme court has ruled other legislation enacted contemporaneously does "not apply to a direct appeal from a judgment and sentence entered before July 1, 2019," *see State v. Macke*, ___ N.W.2d ___, ___, 2019 WL 4382985, at *1 (Iowa 2019) (discussing new sections 814.6 and 814.7), the applicability of new section 814.6A has not been decided. Because we reject or do not consider Fountain's pro se claims, we find it unnecessary to decide whether the new provision applies to this appeal.

[9] *Allison* was decided after the denial of the application resulting in this appeal. We reject Fountain's argument that *Allison* should apply to his seventh application to relate the time of filing back to his first application for PCR because he acted "promptly" after receiving the affidavits. Fountain did not file his application until nearly two years after receiving the 2015 affidavits. We do not consider this "prompt." *See, e.g., Polk*, 2019 WL 3945964, at *2 (noting a gap in the neighborhood of six months does not fit the definition of prompt). In any event, the seventh application made absolutely no allegation of ineffectiveness of

We also reject Fountain's request that we convert and consider his application as a freestanding claim of actual innocence under caselaw decided after the denial of the instant PCR application. *See generally Schmidt*, 909 N.W.2d at 781–800. As the State points out, *Schmidt* only really changed or clarified the law as to PCR applicants who plead guilty. *See* 909 N.W.2d at 790 (overruling prior "cases that do not allow defendants to attack their pleas based on extrinsic grounds when they claim actual innocence"). Individuals convicted of public offenses by ways other than a plea of guilty have long been allowed to attempt to prove up their actual innocence under chapter 822, and previously chapter 663A. *See generally* 1970 Iowa Acts ch. 1276, §§ 1–11 (enacting postconviction-relief procedure); *see also Poulin v. State*, 525 N.W.2d 815, 816 (Iowa 1994) (noting chapter 663A was transferred to chapter 822 by the code editors in 1993). That is exactly what Fountain's application was aimed at.

We turn to the 2015 affidavits of recantation by Daggett and Carr stating that they provided false testimony upon being pressured by law enforcement and the prosecution. The district court concluded, on the merits, that the affidavits lacked credibility and the recanted testimony generally had no effect on Fountain's murder trial. The court made no express finding as to whether the information contained in the affidavits amounted to grounds of fact that could not have been

---

prior PCR counsel. In fact, Fountain's brief in support of the application opined his attorney's advice to not pursue a new trial upon Howard's purported testimony at that time was "sound."

We also note our recognition of recent legislation, effective July 1, 2019, arguably superseding *Allison* outright by amending section 822.3 to provide: "An allegation of ineffective assistance of counsel in a prior case under this chapter shall not toll or extend the limitation periods in this section nor shall such claim relate back to a prior filing to avoid the application of the limitation periods." 2019 Iowa Acts ch. 140 § 34. Because we reject Fountain's *Allison* claims, we need not decide whether the amendment is retroactive.

raised within the limitations period.  *See* Iowa Code § 822.3.  Instead, the court concluded on the merits that the evidence would not change the result if a new trial was granted, given the other evidence of guilt presented.  *See Cornell v. State*, 430 N.W.2d 384, 387 (Iowa 1988) (listing required elements to prevail on claim of newly discovered evidence).  Our supreme court has "explicitly and 'specifically reject[ed] any requirement that an applicant must show the ground of fact would likely or probably have changed the outcome of the underlying criminal case in order to avoid a limitations defense.'"  *Schmidt*, 909 N.W.2d at 799 (quoting *Harrington v. State*, 659 N.W.2d 509, 521 (Iowa 2003)).  Courts are not to "reach the merits of a claim based on a new ground of fact in deciding whether the exception to the three-year statute of limitations applies."  *Id.*  That is exactly what the district court did here, which we conclude was error.  For that reason, we reverse the summary disposition ruling as to the 2015 affidavits, and we remand the matter to the district court to properly determine whether the affidavits amount to newly discovered evidence and thereafter proceed in accordance with Iowa law.[10]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[10] We take no position on whether the 2015 affidavits qualify as newly discovered evidence sufficient to toll the statute of limitations.  We do not consider Fountain's additional pro se claims of a *Brady* violation and that he is entitled a limited remand to pursue discovery on the same, that his PCR attorney had insufficient time to review his case, and that he should have been allowed depositions prior to summary disposition.  A claim of a *Brady* violation was never made below.  While Fountain did move for depositions, the motion was never ruled upon, and neither he nor counsel objected at the time of hearing on insufficient time or insufficient discovery grounds.